**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **08-04215-hb**
Adversary Proceeding Number: **09-80052-hb**

**ORDER**

The relief set forth on the following pages, for a total of 11 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**05/17/2010**



US Bankruptcy Judge
District of South Carolina

Entered: 05/18/2010

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Joe Gibson's Auto World, Inc.,<br><br>Debtor(s). | C/A No. 08-04215-HB<br><br>Adv. Pro. No. 09-80052-HB<br><br>Chapter 11 |
| Joe Gibson's Auto World, Inc.,<br><br>Plaintiff(s),<br><br>v.<br><br>Zurich American Insurance Company<br>Universal Underwriters Insurance Company,<br><br>Defendant(s). | **ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES (DOCKET # 91)** |

THIS MATTER came before the Court for hearing on April 22, 2010, pursuant to Plaintiff's Motion to Compel Discovery Reponses and the Objection thereto.

Plaintiff filed this adversary proceeding on April 1, 2009, stating causes of action for breach of contract, bad faith refusal to pay a claim, and for a declaratory judgment.[1] An Answer was filed along with a Counterclaim. Plaintiff served discovery requests on Defendants[2]. Defendants objected to the production of certain documents on the grounds of relevance and also claimed that production of some was not required because they are protected by the attorney/client privilege and/or because they are Defendants' work product

---

[1]  Plaintiff has since amended the Complaint but the requests for relief have not changed.
[2]  Defendant Zurich has repeatedly asserted that the proper party is Universal Underwriters Insurance Company and the Court recently granted Plaintiff's Motion to add that company as an additional Defendant, over the Objections of Defendants. Defendants assert that only Defendant Universal should be named. Hereinafter for convenience the Court will make reference generically to "Defendants" for the purposes of this Order only. Any statements of fact or conclusions of law using the term "Defendants" shall not be interpreted as a finding as to whether either Defendant is the proper party.

prepared in anticipation of litigation. Defendants provided a Second Amended Privilege Log identifying and describing documents and stating the privilege claimed.

This adversary proceeding arose out of hundreds of consumer claims and suits filed against Plaintiff in other forums, and from insurance coverage provided by Defendants to Plaintiff under a policy period that began on November 1, 2006, and continued until November 1, 2008. Defendants provided some defense to Plaintiff under a reservation of rights. Defendants hired attorney Clay Walker to defend Plaintiff. Plaintiff filed for Chapter 11 bankruptcy protection on July 16, 2008. Walker continued to represent Plaintiff in the litigation matters as needed. Plaintiff also employed bankruptcy counsel.

In September of 2008, Plaintiff informed Defendants of the intention to initiate this adversary action against Defendants. Defendants later hired bankruptcy counsel and coverage counsel to prepare for this litigation. In December of 2008, mediation took place relating to the numerous consumer claims pending against Plaintiff. In February of 2009, a Global Settlement Agreement ("GSA") resulted between Plaintiff, Defendants and various other parties in the bankruptcy and litigation. Disputes involving the interpretation of the GSA arose thereafter. Over the objections of Defendants, the GSA was approved and incorporated into the Chapter 11 Plan by order dated June 29, 2009.

The Privilege Log lists communications between Walker and Defendants between August 25, 2008, and February 19, 2009, the date the GSA was executed (Log Nos. 9–14). Defendants claim that these documents are shielded from production based on attorney/client privilege between Walker and Defendants. The Privilege Log also includes similar communications after that time through June 30, 2009 (Log Nos. 20, 21, 23, 24, 26) between Walker and Defendants. The description of all communications between August

25, 2008, and June 30, 2009, indicate that they involve reports from Walker to Defendants regarding the terms of the GSA and the role it played in subsequent bankruptcy hearings. The most recent communication is dated July 10, 2009 (Log No. 28), and is described as "Letter from: Clay Walker To: Brad Martin Re: Communication and work product between counsel for Zurich not in the common interest of Joe Gibson." The content of this document is not further described.

The Privilege Log also includes documents designated as "Work Product. This Document was prepared in anticipation of litigation by insurer." The documents in question are Log Nos. 16—18 and 29. These documents were prepared by various non-lawyer individuals associated with Defendants.

In pleadings filed with the Court related to the interpretation, approval, and enforcement of the GSA, Plaintiff asserted that in addition to representing Plaintiff in the pending consumer claim litigation, Walker also provided legal representation to Defendants while the GSA was negotiated, and eventually executed the GSA on behalf of Defendants. Defendants disputed this claim by filing a document which stated: "[i]t is undisputed that Mr. Walker represented Joe Gibson, not [Defendants] . . . . No one can fairly claim that Walker represented [Defendants]. . . . Walker never negotiated on behalf of [Defendants], only communicated [Defendants'] position to the other Participating Parties." In support of the position taken in documents previously filed with the Court, Defendants also filed the Affidavit of Senior Liability Specialist, Patti Gay, undated and uncertified but filed on June 19, 2009. That affidavit indicated that Defendants hired Walker to represent Plaintiff. Gay referred to Walker as "Gibson's attorney." She also stated that, as a result of a settlement conference in February 2009, "[s]everal drafts of [the GSA] . . . were sent to me [Gay] by

3

Walker." She further stated, "Walker forwarded the final draft to me on the evening of February 18, 2009, which I reviewed on the morning of February 19, 2009. While Walker had some concerns about some language, I thoroughly reviewed the agreement as a whole and concluded that it accurately reflected . . . [Gay's understanding of the agreement]." She further stated that she authorized Walker to sign the agreement on behalf of Defendants "for convenience sake only." The Court's records in this case also include the Affidavit of Walker, dated June 19, 2009, which included the following statement regarding the GSA: "To my knowledge, I was the only person who communicated offers and demands to and from the insurer [Defendants herein] during the negotiations that led to the GSA. At no time did I act in these negotiations as counsel for the insurer. I represented Joe Gibson and the companies which bear his name [including Plaintiff]."

### Attorney/Client Privilege

Defendants assert the attorney/client privilege as a bar to the production of numerous documents involving Walker. Walker was the attorney hired by Defendants (the insurer) to represent Plaintiff (the insured) against claims made by third parties, thereby forming a tripartite relationship between Plaintiff, Defendants and Walker. Such a relationship presupposes the absence of secrecy between the parties. *See Eureka Inv. Corp., N.V. v. Chicago Title Ins. Co.*, 743 F.2d 932, 937 (D.C. Cir. 1984).

"The attorney-client privilege protects against disclosure of confidential communications by a client to his or her attorney." *Crawford v. Henderson*, 589 S.E.2d 204, 207 (S.C. Ct. App. 2003). The burden of establishing the attorney-client privilege rests on the party asserting it. *State v. Love*, 271 S.E.2d 110, 112 (1980); *United States v. Jones,* 696

4

F.2d 1069, 1072 (4th Cir. 1982); *United States v. (Under Seal)*, 748 F.2d 871, 876 (4th Cir. 1984).

South Carolina courts recognize the following essential elements giving rise to the privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except that the protection be waived.

*State v. Doster,* 284 S.E.2d 218, 220 (S.C. 1981).

Many jurisdictions, including South Carolina, strictly construe the attorney-client privilege. *Crawford*, 589 S.E.2d at 207; *Doster*, 284 S.E.2d at 219. Under a strict construction of the attorney-client privilege, the party "asserting the privilege must show that the relationship between the parties was that of attorney and client and that the communications were confidential in nature." *Crawford*, 589 S.E.2d at 207. "[T]he privilege must be tailored to protect only confidences disclosed within the relationship." *Doster*, 284 S.E.2d at 219.[3]

The reasoning behind strict construction of the attorney/client privilege "is that evidence excluded under the privilege is not necessarily incompetent." *Id.* at 219. "The public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice." *Id.* at 220. "Although the privilege has a venerable pedigree and helps to ensure competent and complete legal services, it is nonetheless inconsistent with the general duty to disclose . . . ." *(Under Seal)*, 748 F.2d at 875. "[T]he privilege 'impedes [the] full and free discovery of the truth,' and is 'in

---

[3] Additionally, assuming an attorney-client relationship exists, "[n]ot every communication within the attorney and client relationship is privileged." *Doster*, 284 S.E.2d at 220.

5

derogation of the "public's right to every man's evidence . . . ."'" *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984). Thus, the privilege must be strictly construed and "confined within the narrowest possible limits consistent with the logic of its principle". *Id.*

Defendants' Brief argues that the communications in question were given to Defendants by Walker to inform Defendants of impending litigation, and that the communications retained his mental impressions of the different entities that would be part of the forthcoming litigations. Defendants argue that the communications were not made in the defense of the underlying claims against Plaintiff, but rather as part of Walker's duty as retained counsel for Defendants as a result of the tripartite relationship. They argue that as retained counsel he had a duty to notify Defendants of what was going on in the underlying case and to what extent those events affected both Plaintiff and Defendants and that Walker was "fulfilling his legal duties to Defendant[s] separate from his duties to Plaintiff."

However, a mere duty of an attorney to report to Defendants, or a tripartite relationship as the result of an insurance policy, does not necessarily activate the shield of the attorney/client privilege. The facts in this record regarding the relationship between Walker and Defendants indicate that Defendants repeatedly disclaimed allegations that Walker was representing Defendants' interest in any matter related to the GSA until this discovery request was made. As a result, Defendants cannot sincerely assert any reasonable expectations of confidentiality in communications with Walker for any document or matter relating to the GSA. The facts in this record do not support Defendants' claims that items represented by Privilege Log Nos. 9—14, 20, 21, 23, 24, 26, and 28 are protected from

6

disclosure. The Court finds that Defendants have failed to sustain the burden of establishing that the withheld documents are subject to attorney/client protection.

## Work Product

Defendants claim a privilege in several documents allegedly prepared by non-attorneys associated with Defendants in anticipation of litigation. Defendants argue that each of the items was created after September 18, 2008, the date that Plaintiff's bankruptcy counsel notified Defendants that Plaintiff intended to file this adversary proceeding.

Rule 16(b)(3) of the Federal Rules of Civil Procedure is essentially a codification of the work product privilege recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). Rule 26(b)(3) provides: "Ordinarily, a party may not discover documents . . . prepared in anticipation of litigation . . . by or for another party or its representative . . . ." Fed. R. Civ. P. 26(b)(3)(A). However, documents prepared in anticipation of litigation may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party seeking discovery of the documents shows (a) it has substantial need for the materials to prepare its case and (b) cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(i)-(ii).

Documents prepared by an insurer in the ordinary course of business are not entitled to work product protection. *McDougall v. Dunn,* 468 F.2d 468, 473 (4th Cir. 1972). The Fourth Circuit Court of Appeals has held:

> *[A]ny* report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of . . . Rule 26(b)(3) . . . .

7

*McDougall,* 468 F.2d at 473 (emphasis in original). Thus, under *McDougall,* documents prepared by an employee of an insurance company do not constitute materials prepared in anticipation of trial within the meaning of Rule 26(b)(3) unless they are prepared by or for an attorney with an eye toward securing an attorney's legal expertise.

Plaintiff asserts a cause of action against Defendant for first party bad faith. A bad faith cause of action arises from the insurer's unreasonable action in denying a claim. *Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155 (S.C. 1986). Where, as here, an insurer's mental impressions are directly in issue, and production of all documents contained in the insurer's claims file should be ordered upon a showing of compelling need.

The South Carolina District Court has recognized that the plaintiff in a first party insurance bad faith case has a substantial need for the documents contained in the insurer's claims file:

> Whether [Defendant] properly investigated the case, whether it sought and followed advice and recommendation of its agents, adjusters and attorneys, are facts which are surely relevant to the issue of its negligence, recklessness, and bad faith in not settling the prior case. Evidence of these matters, if any exists, are in the files of [Defendant] and may be quite necessary as proof of an unreasonable and arbitrary attitude on the part of [Defendant] in not settling the cases when advised to do so. Such evidence is not otherwise available to [Plaintiff] in advance of trial. [Plaintiff] cannot properly prepare and try [its] case without this information; the denial of [its] Motion will result in hardship and prejudice; and the production of such items will aid substantially in proving [its] cause of action . . . .

*Chitty v. State Farm Mutual Automobile Ins. Co.,* 36 F.R.D. 37, 40 (D.S.C. 1964).

Courts in other jurisdictions have applied the same or similar reasoning in holding that the work product privilege does not apply to materials contained in the insurer's claims file:

> [B]ad-faith actions against an insurer, like actions by client against attorney, patient against doctor, can only be proved by showing exactly how the

8

> company processed the claim, how thoroughly it was considered and why the company took the action it did. The claims file is a unique, contemporaneously prepared history of the company's handling of the claim; in an action such as this the need for the information in the file is not only substantial, but overwhelming.

*Brown v. Superior Court*, 670 P.2d 725, 734 (Ariz. 1983) (citing *APL Corp. v. Aetna Cas. & Surety Co.*, 91 F.R.D. 10, 13-14 (D.Md. 1980)).

With respect to the undue hardship element of the test set forth in Rule 26(b)(3), the court in *Brown, supra,* noted that "[t]he 'substantial equivalent' of this material cannot be obtained through other means of discovery." *Brown,* 670 P.2d at 734.

Plaintiff has established that the documents are discoverable under Rule 26(b)(1) and that it has substantial need for the materials to prepare its case and cannot obtain their substantial equivalent by other means.

**Relevance**

Federal Rule of Evidence 401 provides that "'relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Defendants argue that they should not be required to produce much of the information Plaintiff seeks to discover because the documents in question bore a date that is not within a period of time that is relevant to this lawsuit.

The Court will not exclude the evidence in question on the grounds of relevance at this time. Any document that does not meet the relevance test can be excluded at the time of trial.

**IT IS THEREFORE, ORDERED, THAT:**

1. Plaintiff's Motion to Compel is **GRANTED**;

9

2. Defendants shall produce the documents set forth on the Second Amended Privilege Log numbered 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, 23, 24, 26, 28, and 29 to Plaintiff within fifteen (15) days from the entry of this Order.

**AND IT IS SO ORDERED.**